UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

PAUL NOVARA,

    Plaintiff,

v.                                            Case No. 1:16-CV-838

SPARTANNASH ASSOCIATES, LLC,       HON. GORDON J. QUIST

    Defendant.
_____/

## OPINION REGARDING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Paul Novara, sued his former employer, SpartanNash Associates, LLC, alleging that SpartanNash discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act (ELCRA), M.C.L. §§ 37.2101, *et seq.*, when it terminated him for failing to meet SpartanNash's performance expectations.[1] SpartanNash has moved for summary judgment, and the Court heard oral argument on September 11, 2017.

The issue for the Court is whether Novara has presented sufficient evidence of pretext to survive summary judgment. The Court answers no, and will grant SpartanNash's motion.[2]

### I. BACKGROUND

In 2013, Grand Rapids, Michigan-based Spartan Stores, Inc. merged with Minneapolis-based Nash Finch Company, resulting in SpartanNash Company, the parent company of Defendant

---

[1] Novara also originally alleged retaliation claims under both the ADEA and ELCRA. However, Novara stipulated to the dismissal of those claims with prejudice. (ECF Nos. 43, 44.)

[2] ADEA and ELCRA claims are analyzed under the same standards. *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009).

SpartanNash. (ECF No. 46-2 at PageID.148.) Prior to the merger, Spartan operated grocery distribution and retail stores in Michigan, Indiana, and Ohio, and Nash operated a wholesale grocery network and grocery distribution centers for military commissaries and exchanges. (*Id.*) The merger was announced in July 2013 and completed in November 2013. (ECF No. 46-6 at PageID.179–80.)

Novara had been employed by Nash. Novara began working for Nash in 2006 as a merchandiser and eventually became a category manager. (*Id.* at PageID.175–76.) At the time of the merger, Novara was the category manager for general merchandise, which included items such as pet supplies, brooms, mops, and aluminum foil. For a brief time, Novara was also responsible for candy, gum, and mints. (*Id.* at PageID.177.) Nash also had another category manager for general merchandise who separately handled health and beauty care. (*Id.*) The two category managers also had some administrative support. (*Id.*) For several months after the merger, Novara assumed responsibility for Nash's health and beauty care products as the two companies combined and Nash employees began to leave. (*Id.*)

At the time of the merger, Novara had been reporting to Roy Fossum at Nash. (*Id.*) Novara served as Fossum's lead person during the transition period for merger-related work. (ECF No. 47-2 at PageID.318.) This work included training legacy Spartan employees who visited Minneapolis about the Nash-side of the business, including category management. (ECF No. 46-6 at PageID.182–83, 196.) Novara continued to report to Fossum until June 2014, when Fossum accepted a position in Omaha, Nebraska. (ECF No. 48-2 at PageID.407.) From June to August 2014, Novara reported to Karen Bakewell, Spartan's Director of General Merchandise/Health and Beauty Care (GM/HBC). (ECF No. 46-6 at PageID.182.) Based on his discussions with Fossum, who had worked with Bakewell for a period of time following the merger, as well as Novara's own

2

interactions with Bakewell, Novara concluded that Bakewell was very detail oriented, "wanted control of absolutely everything," and was a difficult supervisor. (*Id.* at PageID.186–87.)

After the merger was completed, Novara accepted an offer to move to Grand Rapids to continue working as a category manager for SpartanNash. (*Id.* at PageID.180–81.) Novara moved to Grand Rapids in August 2014. (*Id.* at PageID.178.) Novara received SpartanNash's standard relocation package and, at Novara's request, an additional $10,000 to help offset the fees Novara paid to sell his house. (*Id.* at PageID.181.) Novara also requested a pay raise, but SpartanNash denied the request, in part, because Novara would already be the highest-paid category manager at SpartanNash in the CM/HBC area. (*Id.*; ECF No. 46-4 at PageID.164.)

Novara continued to report to Bakewell when he moved to Grand Rapids. Novara was 61 years old when he began reporting to Bakewell, and Bakewell was 58 years old. (ECF No. 46-6 at PageID.174; ECF No. 46-2 at PageID.148.) In contrast to Nash, where Novara had been one of only two GM/HBC managers and was assisted by two assistant category managers and one administrative employee (ECF No. 46-6 at PageID.177), in Grand Rapids with SpartanNash, Novara was one of nine GM/HBC category managers, all of whom reported to Bakewell. (ECF No. 46-2.) Novara was assigned to work in a "pod" with two other category managers, Cassandra Nino and Dan Kowalski, and an administrative assistant to support those three category managers. (ECF No. 46-6 at PageID.187–88.) As part of the consolidation of GM/HBC category management in Grand Rapids, Bakewell reallocated categories among category managers by product line, and assigned Novara pet supplies, batteries, continuities (for example, a piece-of-the-week program that could be combined as a set, such as pots and pans), dollar (products that can be sold for a dollar), and closeouts (overstock products that can be sold at a deep discount). (*Id.* at PageID.188; ECF No. 46-3 at PageID.156.) Bakewell considered those categories a "starter desk," meaning that they were a

3

smaller number of less-complex categories that would allow Novara to learn the new system, and he would be assigned additional general merchandise categories after about six months, once he settled in and learned his new role. (*Id.* at PageID.162.)

Although Bakewell was optimistic about Novara's performance when he began his new position, by the end of 2014, Bakewell noted some issues of concern, particularly Novara's declining sales. (*Id.* at 157.) As part of her process for evaluating category managers' annual performances, Bakewell prepared a scorecard, ranking all of the category managers according to year-end sales results. (ECF No. 46-2 at PageID.148–49.) Novara—the most experienced and highest-paid category manager in Bakewell's group—ranked last overall. (*Id.* at PageID.148–49, 151; ECF No. 46-6 at PageID.212.) Bakewell also noted other performance issues and raised them, along with declining sales, in Novara's annual performance evaluation. Novara acknowledged that his overall total Warehouse Sales were down 7.7% from the prior year for his assigned categories and his Vendor Gross Budget profit margins were down 5.8% for overall Warehouse Sales. (ECF No. 46-6 at PageID.220.) Bakewell stated that Novara "was given a light category assignment [but] he has not been able to manage his business successfully," and that his "[r]esults are very disappointing and [it is] troubling that Paul was unable to implement plans to correct." (*Id.*) Bakewell also noted several areas in which Novara needed improvement, including his knowledge of Spartan systems. (*Id.* at PageID.221–22.) In her overall summary, Bakewell wrote that Novara's performance fell short of the minimum expectations of the position and needed immediate improvement, and that Novara needed "to fulfill his commitment to being all in and generating positive sales and margin results." (*Id.* at PageID.223.)

On April 14, 2015, Bakewell issued Novara a Written Warning and Performance Improvement Plan (PIP) because Novara's sales numbers continued to decline through the first

quarter of 2015. In addition to declining sales, Bakewell noted other aspects of Novara's performance that required immediate improvement, including the accuracy and timeliness of his work, effective communication, and knowledge of SpartanNash business systems. Bakewell also pointed out that Novara was the only category manager who did not attend the March and April training sessions for AIMIA, a software program used by category managers. (*Id.* at PageID.225–26.) The PIP noted that Novara had been receiving weekly guidance through meetings with Bakewell and that Novara's performance would be reviewed in 30 days. (*Id.* at PageID.224.)

Bakewell continued her weekly meetings with Novara after the PIP and gave Novara an additional 30 days to improve his performance before conducting her review. On June 12, 2015, Bakewell met with Novara to review his progress. Bakewell did observe "effort and some improvement," but she found that his "performance [was] still not meeting expectations." (*Id.* at PageID.229.) In particular, Bakewell observed that Novara's sales were still declining, and he needed immediate improvement in his decision making and accountability. (*Id.*) Bakewell gave Novara an additional 30 days to improve his performance. Novara disagreed with Bakewell's assessment and refused to sign the follow-up document; however, he acknowledged that the sales numbers Bakewell reported were accurate. (*Id.* at PageID.210.) Although Novara admits that Bakewell was not fabricating her criticisms, he believed she was "blowing things out of proportion because everybody was making mistakes." (*Id.* at PageID.211.)

At the end of the 30-day period, Bakewell decided that Novara had not met the requirements of his PIP. A key part of Bakewell's decision was a planogram—a schematic that stores use for planning and execution of product sales—that Novara created for pet supplies that Bakewell considered a "total disaster." (ECF No. 46-3 at PageID.159.) Bakewell received a number of complaints from end users about serious errors in the planogram that precluded its use. (*Id.*) In

5

particular, the planogram contained numerous discontinued items and failed to specify the markdown process for discontinuing products, and Novara failed to complete purchasing documentation to ensure that new product was on hand. (*Id.*) Bakewell thus had to stop the product "resets" and recall the planogram until it could be corrected. (*Id.*) Consequently, on July 13, 2015, Novara was terminated for performance issues. (ECF No. 46-6 at PageID.213.)

## II. MOTION STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)). In deciding whether summary judgment is proper, a court may consider "materials in the record, including depositions, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56c)(1)(A).

## III. DISCUSSION

Novara claims that SpartanNash terminated him based on his age. Novara concedes that he has no direct evidence of age discrimination and, therefore, he must establish his claim through circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. (ECF No. 47

at PageID.251.) *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) (applying *McDonnell Douglas* framework to evaluate circumstantial evidence-based ADEA claim). For purposes of its motion, SpartanNash concedes that Novara can establish a prima facie case of age discrimination (ECF No. 46 at PageID.138.), and Novara, in turn, concedes that SpartanNash has offered a legitimate, nondiscriminatory reason—Novara's failure to meet performance expectations—for terminating Novara's employment. (ECF No. 47 at PageID.252.) Thus, the only issue is whether Novara has offered sufficient evidence to create an issue of fact regarding pretext. At bottom, Novara has the burden of showing "by a preponderance of the evidence, that age was the 'but-for' cause" of his termination. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352 (2009).

Given the posture of the case, Novara must produce sufficient evidence to show that SpartanNash fabricated its nondiscriminatory explanation to conceal an illegal motive to terminate Novara because of his age. *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citing *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)). "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805–06 (6th Cir. 1998). The first type of rebuttal requires that the employee show the employer's proffered reason for the discharge never happened. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The second type requires the employee to admit both the facts supporting the employer's proffered reason *and* that such reason could have motivated the adverse action, and to present evidence that the employer was instead motivated by illegal discrimination. *Id.* (citing *Manzer*). Finally, "[t]he third category of pretext consists of evidence that other

employees, particularly employees outside the protected class, were not disciplined even though they engaged in substantially identical conduct to that which the employer contends motivated its discipline of the plaintiff." *Id.* (citing *Manzer*). Novara contends that his evidence establishes all three categories of pretext.[3] The Court disagrees.

**A.      Novara fails to show that SpartanNash's proffered reason has no basis in fact**

Novara has not shown that SpartanNash's reason for terminating him lacks a factual basis. Novara conceded in his deposition that sales and profits are key indicators of performance for category management, (ECF No. 46-6 at PageID.176), and he admits that Bakewell's scorecard, his 2014 performance evaluation, the PIP, and the follow-up documentation accurately reflected that his sales and profits results were declining. (*See, e.g.*, ECF No. 46-6 at PageID.190, 194–95, 200–01.) Novara does not even attempt to show that Bakewell's sales numbers were false: it is undisputed that Novara was last in overall sales on Bakewell's 2014 scorecard, and his sales continued to decline into the first half of 2015. Instead, Novara offers excuses as to why he was not responsible for declining sales. For example, Novara blames SpartanNash's computerized accounting system for assigning some of his sales to other category managers. (ECF No. 47 at PageID.253.) Novara also says that Bakewell reassigned him product categories from other category managers, such as pet supplies, that were already declining in sales when he received them. (*Id.* at PageID.253–54.) Novara also points out that Bakewell's 2014 end-of-the-year scorecard shows that he was not the only category manager having problems, as all category managers' sales were down across the board. (*Id.* at 254.) Even if all of this is true, Novara still has not shown that Bakewell's primary basis for criticism—Novara's poor and declining sales performance—lacked

---

[3]Although Novara claims to rely on all three categories of pretext, he fails to marshal his evidence among the different categories. Instead, he takes a smorgasbord-type approach, leaving it for the Court to pick and choose what evidence might pertain to each category.

8

a basis in fact.[4]  Novara's excuses cannot establish pretext because "[a]n employee's opinion that he did not perform poorly is irrelevant to establishing pretext where the employer reasonably relied on specific facts before it indicating that the employee's performance was poor." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007); *see also Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725–26 (6th Cir. 2012) ("Though Lefevers disputes aspects of the contents and context of the performance appraisals, his disagreement with GAF's assessment of his performance . . . does not render GAF's reasons pretextual." (internal quotation marks and brackets omitted)). More importantly, Novara offers no evidence that any of the circumstances he cites as excuses have anything to do with his age.  In particular, Novara has no evidence that Bakewell assigned him categories in a discriminatory manner:  he conceded that he did not know how Bakewell decided what categories to assign him, and he thought that Bakewell "was trying to balance out the amount of dollars the different category managers were doing."  (ECF No. 46-6 at PageID.207.)

**B.  Novara fails to show that SpartanNash's proffered reason did not actually motivate its termination decision**

Novara does not explicitly point to evidence he claims shows that SpartanNash terminated him for a reason other than poor performance.  Throughout his brief, however, Novara offers his own observations and insights about Bakewell's attitude or views on age, suggesting that Bakewell was motivated by age discrimination.  Such statements include:  "Bakewell would always hire the youngest person she could" (ECF No. 47 at PageID.246); "Bakewell preferred younger employees,

---

[4] Novara argues that he has shown pretext because Bakewell criticized him for numerous errors he made on a New Item form that, according to Bakewell, was a legacy Nash form that Novara had been using for seven years.  Novara says that the New Item form was actually a new form that SpartanNash adopted post-merger and that the form caused problems for the entire company.  Novara argues that Bakewell's assertion that the form had been in use for seven years shows pretext because Bakewell's "seven-year use" claim has no basis in fact.  (ECF No. 47 at PageID.254–55.)  The argument lacks merit.  Bakewell's point was that Novara was making errors on the form and had to be more careful—a fact Novara does not dispute.  Moreover, the evidence shows that Bakewell's primary focus was Novara's lackluster sales performance, rather than errors he made in completing the new form.

9

and . . . believed that older employees, such as Novara, had too many personal obligations such as doctor's appointments (due to health problems) and families, making them less desirable" (*Id.* at PageID.247); and "Bakewell looked at him like he was a sick old man who could not do his job" (*Id.* at PageID.249). But Novara's interpretation of Bakewell's comments and expressions is irrelevant because he is not competent to testify about Bakewell's thoughts. As the Sixth Circuit has observed, a plaintiff "must offer sufficient evidence that a reasonable jury could find by a preponderance of the evidence that age discrimination was a determining factor in the employer's decision." *Snyder v. Pierre's French Ice Cream Co.*, 589 F. App'x 767, 771 (6th Cir. 2014) (internal quotation marks omitted). "[A]n employee's personal beliefs, conjecture and speculation [regarding his employer's bias] are insufficient to support an inference of age discrimination." *Id.* (internal quotation marks omitted); *see also Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) ("[M]ere personal belief, conjecture and speculation are insufficient to support an inference of . . . discrimination." (internal quotation marks omitted)).

The only age-related comment by Bakewell that Novara offers is Bakewell's alleged statement during Novara's 2014 performance review that "People from our generation have a hard time with computers. I do myself, but you just have to keep doing it until you get it." (ECF No. 47 at PageID.255.) This alleged statement is not evidence of age discrimination. First, nothing about this statement suggests that it was discriminatory. If anything, the statement—coming from someone close to Novara's age—expressed both empathy and encouragement to Novara for his struggles with using computers. Moreover, even if the remark could be considered discriminatory, it is not evidence of discrimination because it was "unrelated to the decision to dismiss [Novara]

10

from [his] employment."[5] *Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 287 (6th Cir. 2012) (citing *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009)). Contrary to Novara's assertion, the instant case is distinguishable from *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564 (6th Cir. 2003), in which the Sixth Circuit found that several statements by the plaintiff's supervisors that the plaintiff was essentially too old to manage a store constituted direct evidence of discrimination. *See id.* at 571–72. The supervisors made the statements around the time the plaintiff was replaced by a younger person. In contrast, Novara admits that he has no direct evidence of discrimination, and Bakewell's single statement was unrelated to Novara's termination.

Novara also points to Fossum's opinion of Novara as a top performer at Nash and a good business person, as well as Fossum's 2013 performance evaluation of Novara, as evidence of Bakewell's age-based animus. But Fossum's views were not the standard by which Novara was judged once he began working for SpartanNash and reporting to Bakewell. *See Wright v. Sears, Roebuck & Co.*, 81 F. App'x 37, 42 (6th Cir. 2003) (noting that "affidavits from prior district store mangers do not demonstrate that plaintiffs are meeting the current expectations of the position, which expectations may have changed over time or with new management"). Fossum was not Novara's boss at SpartanNash, and thus he would have no way to judge Novara's performance. Moreover, in all likelihood, Fossum and Bakewell had different management styles, expectations, and standards that influenced their views of Novara's performance. Finally, Fossum himself testified that he never heard or saw Bakewell say or do anything that led him to believe that Bakewell would discriminate, or was discriminating, against Novara or any other employee on the basis of age. (ECF No. 48-2 at PageID.409.)

---

[5]Despite conceding that he has no direct evidence of discrimination, Novara claims that Blakewell's alleged statement is direct evidence of discriminatory animus. Novara is wrong. It is not direct evidence of age discrimination.

### C. Novara fails to show that SpartanNash's proffered reason was insufficient to motive Novara's discharge

The third type of rebuttal evidence "is a direct attack on the credibility of the employer's proffered motivation for taking the adverse action against the plaintiff." *Gulley v. Cnty. of Oakland*, 496 F. App'x 603, 610 (6th Cir. 2012). To make this showing, a plaintiff may offer "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *McKinley v. Skyline Chili, Inc.*, 534 F. App'x 461, 465 (6th Cir. 2013) (citation omitted). The plaintiff must show that he is similarly situated to a non-protected employee in all relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). To be similarly situated:

> the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Id.* at 352 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

Novara does not expressly identify any employees whom he claims were similarly situated to him. To the extent Novara claims that Nino and Kowalski were similarly situated to him, the Court disagrees. Unlike Nino and Kowalski, Novara was the highest paid and most experienced category manager in Bakewell's group. By his own admission, Novara "had more experience than everybody in the department combined." (ECF No. 46-6 at PageID.212.) Bakewell therefore had good reason to expect more, including better sales results, from Novara. In addition, Novara fails to show that either Nino or Kowalski engaged in the same conduct but was not discharged. Novara's argument that Nino engaged in similar conduct because she cost SpartanNash between $500,000-600,000 in sales when she was unable to get a new vendor for SpartanNash's book and

magazine program because she used a "pay-as-you-scan" program lacks merit. Novara fails to acknowledge that the vendor stopped serving Spartan stores because it filed for bankruptcy—a circumstance beyond Nino's control. As for Kowalski, Novara claims that Kowalski also made clerical mistakes on forms, but Novara fails to show that Kowalski failed to correct his mistakes after being counseled about the issue. Moreover, Nino and Kowalski were not similarly situated to Novara because their sales performances—the primary reason for Novara's termintion—were not similar to Novara's. Novara was last in sales on Bakewell's 2014 scorecard, whereas Kowalski and Nino ranked second and fourth, respectively. Thereafter, Novara's sales continued to decline. There is no evidence that either Kowalski's or Nino's suffered similar extended declines.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant SpartanNash's motion for summary judgment. A separate order will enter.


Dated: September 27, 2017                         /s/ Gordon J. Quist
                                                 GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE